

04/06/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LONE OAK FABRICATORS, | § | Case No. 08-42232 |
| | § | (Chapter 11) |
| Debtor. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a hearing on the Motion for Determination of Rights Among Creditors and to Pay Creditor's from Garland Proceeds (the "Motion") filed by Lone Oak Fabricators, Inc. (the "Debtor") on December 12, 2008. The parties have essentially stipulated to all relevant facts pursuant to the Amended Agreed Stipulations (the "Stipulations") filed on March 9, 2009. The Court adopts the parties' Stipulations and makes the following findings of fact and conclusions of law.[1]

### I. FINDINGS OF FACT

1.      As detailed in the Stipulations, the Debtor entered into several cross-collateralized loan agreements with First United Bank and Trust Company ("First United") during 2005. As of December 19, 2007, the Debtor was obligated to First United in the total amount of $1,007,814. At the hearing on the Motion, however, First United represented that a portion of this debt had been satisfied through the sale of certain collateral and that approximately $500,000 remained due and owing to it.

2.      First United is the holder of UCC-1 financing statements filed by a predecessor entity in 2001, timely renewed in 2005, and assigned to First United in 2006, covering contracts, accounts, account rights, and accounts receivable, among other

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

1

things. First United also has filed and is the holder of a UCC-1 financing statement filed in 2007 covering contracts, accounts and accounts receivable.

3. The Internal Revenue Service ("IRS") filed a notice of federal tax lien with the Texas Secretary of State's office on November 29, 2006, for taxes due for the second quarter of 2006. The IRS filed a notice of a federal tax lien with the Texas Secretary of State's office on April 12, 2007, for taxes due for the third quarter of 2006. The IRS thereby holds a secured claim against the Debtor in the amount of $58,485.42.

4. In June 2008, the Debtor was awarded a contract for a public works construction project by the City of Garland. The project was identified in the contract as Garland P.O. #14935, Elm Grove Electric Substation, Garland, Texas (the "Project"). The contract price for the Project was $305,925. Although the Project was in excess of $25,000, the City of Garland did not require the Debtor to obtain a payment bond as required by §2253.021(a) of the Texas Government Code.

5. The Debtor failed to pay all of its subcontractors for the materials and labor they supplied in connection with the Project. The total amount due and owing to Delta Steel, LP ("Delta"), White Stone Ventures, LP d/b/a Burleson Pipe & Steel ("Burleson"), North American Galvanizing Company ("North American"), and Advantage Steel Service, Inc. ("Advantage") (collectively, the "Subcontractors") is approximately $200,000. In particular, the Debtor failed to pay (1) $60,780.16 to Delta for the cost of steel materials supplied to the Debtor in June and July 2008; (2) $68,439.96 to Burleson for the cost of materials supplied to the Debtor during July 2008; (3) $44,317.36 to North American for materials supplied to the Debtor in August and

September 2008; and (4) $30,100 to Advantage for the cost of materials supplied to the Debtor on August 6, 2008.

6.   Between August 21 and October 28, 2008, the Subcontractors notified the City of Garland of the unpaid balances pursuant to Section 2253.027 of the Texas Government Code.  The notices were timely, and the notices given by Burleson, North American and Advantage substantially complied with the relevant statutory requirements.  The notice given by Delta, which asserts a claim in the total amount of $60,780.16, did not substantially comply with the requirement that a sworn affidavit must accompany its notice of claim.  *See* TEX. GOV'T CODE §2253.041(c).

7.   The Debtor initiated this bankruptcy case on August 22, 2008, by filing a petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor subsequently completed the Project.  The City of Garland, which had represented that it would not release the monies due the Debtor in light of the Subcontractors' claims, surprised everyone by making a lump sum payment of the total contract price to the Debtor.  The Debtor advised the Court and parties of this payment on November 26, 2008, in its response to a motion by First United seeking relief from the automatic stay.[2]

8.   The Court conducted a hearing on First United's stay motion on December 16, 2008.  Following the hearing, on December 18, 2008, the Court entered an order on instructing the Debtor to place the funds paid by the City of Garland into the registry of the Court pending a determination of rights of First United, the IRS and the Subcontractors to the funds.  The Debtor obeyed the Court's order and has paid approximately $305,925 into the Court's registry.

---

[2] The Stipulations do not include the date that the City of Garland paid the Debtor.

3

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (K) and (O).

2. The Motion involves a dispute between the Subcontractors and First United regarding the priority of their respective liens, if any, against the $305,925 that has been placed in the registry of the Court. Although the IRS also asserts a lien against the funds, the priority of its lien is not at issue. First United has conceded that the liens asserted by the IRS have priority over its own. If the Court determines the Subcontractors have priority over First United, the funds held in the Court's registry are sufficient to satisfy the claims of the Subcontractors as well as the IRS in full.

3. In deciding this dispute, the Court first addresses whether the Subcontractors properly perfected liens on the funds due to be paid to the Debtor pursuant to Chapter 2253 of the Texas Government Code. The Court next addresses whether any of the Subcontractors have an interest in the funds under Chapter 162 of the Texas Property Code and whether any such interest would have priority over First United's lien. Finally, the Court addresses the priority of the various claims against the funds under Chapter 2253 of the Texas Government Code and Chapter 53 of the Texas Property Code.

### A. Chapter 2235 of the Texas Government Code (The McGregor Act)

4. Chapter 2253 of the Texas Government Code, commonly referred to as the "McGregor Act," governs public work contracts such as the Project. *See generally* TEX. GOV'T CODE §§ 2253.001 *et seq.* The Texas legislature promulgated the McGregor Act

4

to provide subcontractors and suppliers involved in public work contracts a basis for recovery, because a subcontractor or a supplier may not place a lien against a public building. *See Capitol Indem. Corp. v. Kirby Rest. Equip. & Chem. Supply Co.,* 170 S.W.3d 144, 147 (Tex. App. - San Antonio 2005, pet. denied); *Redland Ins. Co. v. Sw. Stainless, L.P.,* 181 S.W.3d 509, 511 (Tex. App. - Fort Worth 2005, no pet.); *Ybanez v. Anchor Constructors, Inc.,* 489 S.W.2d 730, 739 (Tex. App. - Corpus Christi 1972, writ ref'd n.r.e.). The McGregor Act requires, among other things, a payment bond for public work contracts exceeding $25,000 to be paid to the governmental entity awarding the public work contract. *Id.* § 2253.021(a)(2). The payment bond is solely for the protection and use of payment bond beneficiaries who have a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or material. *See id.* §2253.021(c)(1).[3]

5.  At issue in this case is the proper interpretation of Section 2253.027(a)(2) of the Texas Government Code. This section provides as follows:

> (a) If a governmental entity fails to obtain from a prime contractor a payment bond as required by Section 2253.021: …(2) a payment bond beneficiary is entitled to a lien on money due to the prime contractor in the same manner and to the same extent as if the public work contract were subject to Subchapter J, Chapter 53, Property Code.

Chapter 53 of the Texas Property Code, also known as the Hardeman Act, governs public works contracts that do not require a payment bond under the McGregor Act.[4]

---

[3] Section 2253.021 provides, in relevant part, that "payment bond beneficiaries" are those "who have a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or material." TEX. GOV'T CODE ANN. §2253.021(c)(1).

[4] In 1983, the Texas Legislature replaced the Hardeman act with Texas Property Code §§ 53.201-53.211 (previously TEX. REV. CIV. STAT arts. 5452-5472e). Chapter 53 of the Texas Property Code incorporated, and modifies, the Hardeman Act. Prior to the codification, article 5464 of the Texas Revised Civil Statutes provided that "all subcontractors, laborers and materialmen … have preference over other creditors of the principal contractor or builder." TEX. REV. CIV. STAT. art 5464 (Vernon 1958).

5

Subchapter J of Chapter 53 provides for a lien on money due a public works contractor "under a prime contract that does not exceed $25,000 and that is for public improvements in this state …." TEX. PROP. CODE §53.231.

6. Here, there is no genuine dispute that North American, Delta and Burleson have properly perfected claims under Chapter 2253 of the Texas Government Code. Thus, the Subcontractors argue that they have liens on the money that was paid to the Debtor pursuant to Texas Government Code §2253.027(a)(2) and Texas Property Code §53.231. First United responds that Chapter 53 of the Texas Property Code has no application to this priority dispute because the contract price for the Project exceeded $25,000 and Texas Property Code §53.231, by its own terms, has no application. First United cites *Laboratory Design & Equip., Inc. v. Brooks Dev. Authority*, 2008 WL 36614 (Tex. App. -- San Antonio, Jan. 2, 2008) (unpublished) as authority for its argument and urges this Court follow *Laboratory Design* as binding precedent. *See* TEX. R. APP. P. 47.2 (addressing the citation and precedential value of unpublished opinions).

7. Following *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938), federal courts are bound to apply the law in a manner consistent with the laws of the state and the decisions of the highest state court. *Id.* at 78. In making an *Erie* determination, the Court is "emphatically not permitted to do merely what [it] thinks best; [it] must do that which [it] think[s] the [Texas] Supreme Court would deem best." *Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir. 1986) ( *en banc* ). The Texas Supreme Court has not yet resolved a priority dispute between a pre-existing lender and a subcontractor asserting a lien on funds due to the contractor. Accordingly, in deciding this case, the Court is required to make an *Erie* guess as to what the Texas Supreme Court would most

likely decide under the facts of this case. *See Herrmann Holdings Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 558 (5th Cir. 2002) ("[I]n deciding this case, we are required to make an *Erie* guess as to what the Texas Supreme Court would most likely decide."). The decisions of the courts of appeals in civil cases, whether published or unpublished, are not binding on the Texas Supreme Court. *See, e.g., National Indem. Co. v. Spring Branch State Bank*, 348 S.W.2d 528, 531 (Tex. 1961). However, in making an *Erie* guess, the Court defers to intermediate state appellate court decisions "unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Id.* (quoting *First Nat'l Bank of Durant v. Trans Terra Corp.,* 142 F.3d 802, 809 (5th Cir. 1998).

8. As a preliminary matter, *Laboratory Design* is factually distinguishable from the present dispute. The subcontractor in *Laboratory Design* failed to perfect a claim under Chapter 2253 of the Texas Government Code and, therefore, did not have a statutory lien on the funds due to the prime contractor. In this case, in contrast, three of the Subcontractors have properly perfected claims under Chapter 2253 of the Texas Government Code by complying with the relevant statutory requirements. *See* TEX. GOV'T CODE §2253.027(b). Accordingly, unlike the subcontractor in *Laboratory Design*, Burleson, North American and Advantage are "entitled on a lien on money due … to the same extent as if the public work contract were subject to Subchapter J, Chapter 53, Property Code." TEX. PROP. CODE §2253.027(a)(2).

9. First United urges this Court to follow the portion of the *Laboratory Design* opinion addressing the subcontractor's argument that it held an equitable lien on the contract proceeds in the possession of the governmental entity. As an additional basis

7

of its decision, the court in *Laboratory Design* reasoned that Texas Government Code §2253.027(a)(2) permits a lien only in the same matter and to the same extent as Texas Property Code §53.231, which limits permitted liens to cases where the prime contract does not exceed $25,000.  Thus, the court concluded that, notwithstanding Texas Government Code §2253.027(a)(2), no statutory lien could attach under Subchapter J of Chapter 53 of the Texas Property Code to proceeds owing to a prime contractor on a public works project where the prime contract exceeded $25,000 – regardless of whether the prime contractor had obtained a payment bond.  *See Laboratory Design*, 2008 WL 36614 at *4.

        10.    To the extent *Laboratory Design* can be read to suggest that Texas Government Code §2253.012(a)(2), Texas Government Code §2253.027(a)(2), and Texas Property Code §53.231, when read together, mean that suppliers and subcontractors have no lien on funds due the contractor when the contract is in excess of $25,000, the Court is not persuaded that the Texas Supreme Court would agree.  By its own terms, §2253.027 only applies in situations where a government entity fails to obtain a payment bond.  TEX. GOV'T CODE §2253.027(a) ("If a governmental entity fails to obtain a payment bond ….").  Section 2253.021, in turn, only requires a government entity to obtain a payment bond from a prime contractor in situations in which the public works contract is in excess of $25,000.  TEX. GOV'T CODE §2253.021(a)(2).  Thus, to interpret §2253.027(a)(2) together with Chapter 53 of the Texas Property Code in the manner suggested by First United is, in essence, makes Texas Government Code §2253.027(a)(2), a nullity.  Such an interpretation is contrary to the fundamental rule of statutory interpretation that all parts of a statute are to be given effect.  *See, e.g., Weinberger v. Hynson, Westcott &*

8

*Dunning, Inc.,* 412 U.S. 609 (1973); *Crist v. Crist (In re Crist),* 632 F.2d 1226, 1233 n. 11 (5th Cir. 1980) (stating the courts should give effect, whenever possible, "to all parts of a statute and avoid an interpretation which makes a part redundant or superfluous."). *See also, e.g., City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-626 (Tex. 2008) (courts are to construe a "statute's words according to their plain and common meaning, unless a contrary intention is apparent from the context, or unless such a provision leads to absurd results).[5] The possibility that a payment bond beneficiary might have a cause of action against the governmental under Texas Government Code §2253.027(a)(1) does not support an interpretation of Texas Government Code §2253.027(a)(2) that refuses to give any effect to that provision.

**B. Chapter 162 of the Texas Property Code (the Construction Trust Fund Act)**

12.     Next, the Court turns to the arguments made by Delta, Burleson and North American that they have priority over First United pursuant to Chapter 162 of the Texas Property Code. Burleson and North American argue that Chapter 162 of the Texas Property Code provides a basis for their recovery in addition to Chapter 2253 of the Texas Government Code. Delta, as previously discussed, did not properly perfect its claim under Chapter 2253 of the Texas Government Code because its notice of claim, while timely, was not accompanied by a sworn affidavit. *See* TEX. GOV'T CODE

---

[5] The appellate court's analysis in *Laboratory Design* does not discuss the applicable standards for statutory analysis, and the court cites a decision that pre-dates the enactment of Texas Government Code §2253.027(a)(2) as authority for its analysis of that provision. *See City of Corpus Christi v. Heldenfels Brothers, Inc.,* 802 S.W.2d 35 (Tex. App. – Corpus Christi 1990), *aff'd,* 832 S.W.2d 39 (Tex. 1992). Section 2253.027(a)(2) was added in 1993 by the Texas Legislature. *See* TEX. GOV'T CODE §2253.027 (historical and statutory notes). Prior to 1993, the McGregor Act provided for suits by subcontractors against any payment bond obtained by the prime contractor for, but if the governmental entity failed to require a payment bond, the subcontractor had, at best, an equitable lien on funds due the contractor. *See City of Corpus Christi v. Heldenfels Brothers, Inc.,* 802 S.W.2d at 41 (holding that unjust enrichment could not be used to obtain an equitable lien on funds held by contractor where the applicable version of the McGregor Act did not provide for such a lien).

§2253.041(c). Delta nonetheless asserts that its claim has priority over First United's because the funds paid by the City of Garland to the Debtor are trust funds held for its benefit under Chapter 162.

13. Chapter 162 of the Texas Property Code, commonly referred to as the "Texas Construction Trust Fund Act," governs construction payments, loan receipts, and the misapplication of trust funds. *See generally* TEX. PROP. CODE §§ 162.001 *et seq*. Under the Construction Trust Fund Act, all monies paid to a contractor or subcontractor under a construction contract and all loan proceeds received by an owner, contractor or subcontractor for improvement of specific real property in Texas are deemed to be "trust funds" for the benefit of those persons furnishing labor or materials for the construction. TEX. PROP. CODE § 162.001. There is no requirement that mechanics and materialmen comply with Chapter 53 of the Texas Property Code or Chapter 2253 of the Texas Government Code in order to benefit from the trust fund. *See McCoy v. Nelson Util. Serv. Inc.*, 736 S.W.2d 160, 164 (Tex. App. – Tyler 1987, writ ref'd n.r.e.). The Construction Trust Fund Act was enacted to serve as a special protection for subcontractors where contractors refused to pay for material or labor. *See id.*

14. Section 162.004 states that "[t]his chapter does not apply to … a bank, savings and loan, or other lender …." TEX. PROP. CODE §162.004(a)(1). The Texas Supreme Court addressed §162.004 in *Republic Bank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605 (Tex. 1985). In that case, a bank claimed a security interest in a contractor's accounts receivable and sought to prevent the contractor from using the proceeds of the accounts receivable to pay its materialman. The Texas Supreme Court noted that the plain language of what is now §162.004(a) exempts banks and other lenders from the

10

provisions of the Texas Trust Fund Act.  The Texas Supreme Court concluded: "Consequently, under the plain language of the statute, the bank's priority as a secured creditor over the materialman is not defeated." *Id.* at 307-308.

15   Section 162.004 was amended after the *Interkal* case in 1987.  However, the provision, as amended, retains the exemption for banks and other lenders from the trust fund provisions.  As interpreted by the Texas Attorney General in 1988, the 1987 amendment does not affect prior law concerning the applicability of the Texas Trust Fund Act to banks and other lenders.  *See* Op. Tex. Att'y Gen. No. JM-945 (1988).

16.   Here, it is undisputed that Burleson, North American and Delta provided certain materials to the Debtor on credit, which were incorporated into the Project.  It is likewise undisputed that the Debtor received a payment from the City of Garland in the amount of $305,925 for work performed on the Project.  Although First United clearly falls within the exemption of §162.004(a), Burleson, North American and Delta seek to distinguish *Interkal* by arguing that no trust was ever created in *Interkal*, since the bank in that case obtained an injunction before payment was ever made to the contractor.  Burleson, North American and Delta argue that §162.004 was not really at issue in *Interkal* since there was, in fact, no construction trust fund.  This Court, however, "cannot be blind to the plain language of [162.004(a)], which provides that the act shall have no application to any bank." *Interkal,* 691 S.W.2d at 607.  As the Fifth Circuit explained in *In re Waterpoint Intern.*, LLC, 330 F.3d 339 (5th Cir. 2003), "§162.004 plainly stat[es] that the trust fund provisions doe not apply to banks in any situation," *id.* at 346 (discussing *Interkal*).

## C. Priority of Liens

17.     Finally, the Court addresses whether the liens claimed by Burleson, North American, and Advantage have priority over First United's lien.  Chapter 53 of the Texas Property Code addresses the priority of liens as follows:  "All subcontractors, laborers and materialmen who have a mechanic's lien have preference over other *creditors* of the original contractor."  TEX. PROP. CODE §53.121 (emphasis added).  There is no limitation upon the term "creditor" in the wording of §53.121, and, in contrast to the Construction Trust Fund Act, no implication that this provision primes only the claims of unsecured creditors.[6]  As the district court stated in *Waterpoint*: "A subcontractor's lien is superior to a secured interest.  TEX. PROP.CODE §53.121.  If [the subcontractor] had perfected its lien, any literate person could have awarded [the contractor's] money properly."  *In re Waterpoint Intern., L.L.C.,* 279 B.R. 209, 211 (S.D. Tex. 2002), *aff'd,* 330 F.3d 339 (5th Cir. 2003).  *See also Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) ("[W]hen the statute's language is plain, the sole function of the courts-at least where the disposition is not absurd-is to enforce it according to its terms.") (citations and internal quotations omitted).

---

[6] Texas Property Code §53.001, which defines various terms for purposes of Chapter 53, does not include a definition of the term "creditor."  The term "creditor" is generally defined as follows:

> **1.** One to whom a debt is owed; one who gives credit for money or goods. -- Also termed *debtee*. **2.** A person or entity with a definite claim against another, esp. a claim that is capable of adjustment and liquidation. **3.** *Bankruptcy*. A person or entity having a claim against the debtor predating the order for relief concerning the debtor. **4.** *Roman law*. One to whom any obligation is owed, whether contractual or otherwise. Cf. DEBTOR.

BLACK'S LAW DICTIONARY (8th ed. 2004).  *But see In re Huber Contracting, Ltd.,* 347 B.R. 205 (Bankr. W.D. Tex. 2006) (holding that the term "creditor" as used in Texas Property Code §53.231 means only "unsecured creditor" based, in part, on an historical analysis of mechanics' liens under Texas law).

18. A provision similar to §53.231 was part of the Hardeman Act. This and related provisions of the Hardeman Act were applied to a dispute between a pre-existing secured creditor and several materialmen and laborers as follows:

> These statutes were in force when the respective building contracts between the school board and the construction company were made, and are yet in force. The provisions of said statutes entered into and became part of each building contract the same "as if they were expressly referred to, or incorporated in its terms." With reference to the moneys, etc., due or to become due the construction company under each building contract, the company impliedly consented to the terms of the statutes, as constituting terms of the building contract, and thereby agreed, in effect, to subordinate the company's claim to the claims of those furnishing labor or material in furtherance of the work called for in said contract, and who complied with the terms of the statute first quoted above. Consequently the claims which subsequently came into being, for labor and material furnished in furtherance of the work under the particular contract, and which were fixed, in accordance with the statute, as "liens" on funds arising from said contract, became, by virtue of the terms of the contract, superior to the claim of the construction company. The construction company could not, by assigning to another its claim to said funds, discharge the claim of the restrictions provided in the contract from which the claim arose. In the hands of the assignee, the assigned claim remained subject to the terms of the contract which gave laborers and materialmen a potential right to appropriate to the payment of their claims the retained funds which pertain to the particular building contract in furtherance of which the labor or material was furnished.

*Metropolitan Casualty Ins. Co. v. Cheaney,* 55 S.W.2d 554, 556 (Tex. Com. App. 1932) (citing and quoting *Winder Bros. v. Sterling*, 12 S.W.2d 127, 128 (Tex. 1928)). *See also* 61 TEX. JUR. 3d, *Public Works and Contracts*, § 34 (discussing the priority of liens on money due a contractor). Thus, in *Metropolitan Casualty*, the court concluded that the lien of the secured creditor, which had a claim to funds held by the contractor by virtue of several assignments executed long before any of the laborers or materialmen gave notice of their claims, was inferior to the claims for labor and material. *See Metropolitan Casualty*, 55 S.W.2d at 556.

19. At the hearing on the Motion, First United argued that Chapter 53 does not apply based primarily on *Laboratory Design* – an argument this Court has previously discussed and rejected. Lien claimants who have perfected claims enjoy a statutory preference over all other creditors of the subcontractor.[7] *See Waterpoint*, 330 F.3d at 342-345 (discussing Texas law); *Metropolitan Casualty,* 55 S.W.2d at 556 (claim of surety, as assignee of the contractor, was inferior to the properly perfected claims of materialmen and laborers). The Court, therefore, concludes that the liens of Burleson, North American and Advantage have priority over First United's lien with respect to the funds that were due and paid to the Debtor.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the liens of Burleson, North American and Advantage have priority over First United's lien. The Court further concludes that Delta's claim is inferior to First United's lien. The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.

Signed on 04/06/2009

_____ SR

ROBERT C. McGUIRE
UNITED STATES BANKRUPTCY JUDGE

---

[7] The priority of nonpossessory, statutory liens, such as materialmen's liens, is not determined under any provision of Article 9 of the Texas Uniform Commercial Code ("UCC"). Section 109(d)(2) of the Texas UCC specifies that Article 9 does not apply to statutory liens for services or materials. *See* TEX. BUS. COMM. CODE §9.109(d)(2).

14